IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

**ROBERT FLANNIGAN, JR., et al.**                                                           **PLAINTIFFS**

VS.                                         **3:02CV00404-WRW**

**STATE OF ARKANSAS, ARKANSAS**
**GAME AND FISH COMMISSION; BUREAU**
**OF LAND MANAGEMENT; DEPARTMENT OF THE**                     **DEFENDANTS**
**INTERIOR, U.S. GOVERNMENT**

**ROBERT TACKER AND DONNA TACKER**
**AND CLYDE EASON**                                                                         **DEFENDANTS**

**LOTS 1 AND 4 OF SECTION 23 TOWNSHIP**
**25 NORTH, RANGE 6 EAST IN CRAIGHEAD**
**COUNTY ARKANSAS**                                                                         **DEFENDANTS**

**BUREAU OF LAND MANAGEMENT, DEPARTMENT**
**OF THE INTERIOR, UNITED STATES**
**GOVERNMENT**                                                                              **COUNTER-**
                                                                                            **CLAIMANTS**

**ORDER**

Plaintiffs and the United States seek quiet title to approximately 72 acres of wild, unimproved land near the St. Francis River.

**I. Background**

A Petition to Quiet Title was filed by Plaintiffs Robert Flannigan, Jr., Cindy Flannigan, Mike Hook, and Karen Hook alleging that they acquired title to property from Robert Tacker, Donna Tacker, and Clyde Eason through a Warranty Deed recorded in Craighead County.[1]

---

[1] Doc. No. 1. Plaintiffs also claim damages from Eason and the Tackers for not passing good title. Plaintiffs and Defendants Eason and the Tackers share a common interest in having title quieted in Plaintiffs.

1

Plaintiffs claim superior title because their predecessors paid taxes on the disputed property from 1941 until it was conveyed to Plaintiffs, who have continued paying property taxes.

The Arkansas Game and Fish Commission ("AGFC") filed its Answer claiming title to the property under a patent issued by the Bureau of Land Management ("BLM") in 1965.[2]  The BLM filed an Answer and Counter-Claim, denying that Plaintiffs or their predecessors had title against the United States.   According to BLM, it owned the land until it was patented to the State of Arkansas.[3]

Plaintiffs and separate Defendants, BLM and  AGFC filed  Motions for Summary Judgement, each claiming good title.[4]  In their motion, Plaintiffs argued that because Arkansas collected taxes on the property for over 60 years, and failed to contest the issuance of two tax deeds in 1952 and in 1992, it lost claim to the land.

Defendants, BLM and AGFC asserted in their motion that the original tax sale in 1952 was void, and no valid interest could be conveyed from that point forward.  In short,  BLM asserted that the United States owned the land from1803 (under the Louisiana Purchase) until it conveyed it to Arkansas for fish and wildlife purposes in1965.  The BLM also asserted that, under the terms of the patent, the United States has reversionary rights -- i.e. the government automatically regains ownership of the property if it is not used for the purpose set out in the patent.

Because the State failed to challenge the tax deeds within the two year period prescribed under Ark. Code Ann. §18-60-212, partial Summary Judgment was granted against AGFC.[5]

---

[2]Doc. No. 9.

[3]Doc. No. 10, ¶ 2.

[4]Doc. Nos. 21 and 22.

[5]Doc. 39.

2

When AGFC lost its claim to the land, BLM filed a Motion for Judgment reverting the land back to the United States under the terms of the patent and 43 U.S.C. 869-2.[6]

The Motion was denied and a bench trial was held on February 7, 2006.

## II. Discussion

The primary issue is whether the United States held title to the property in 1965 when it gave a patent to Arkansas.  Plaintiffs and Defendant Eason argue that the United States did not hold title because it had already conveyed the land to Arkansas under the Swamp Land Act of 1850.

Plaintiffs also make an equitable argument that the United States should lose title because (1) it  failed to check the records before including the subject property in the patent; (2) represented that any tracts included in the patent, but no longer available, would be eliminated; and (3) failed to list the land as exempt from taxes.

If Plaintiffs are correct that the United States did not hold title in 1965, then no reversion to the United States is possible under the 1965 patent or its authorizing statute, and Plaintiffs are entitled to have title quieted in them.  If, however, the United States did hold title to the land in 1965, then the question becomes whether reversion took place under the statute authorizing the patent.  If reversion took place, the United States is entitled to have its title quieted, and if there was no reversion, Plaintiffs are entitled to quiet title.

### A. The Swamp Land Act

At trial, the surveys conducted of the disputed land in 1845 and 1915, and the land patents of 1856 and 1965 were put in evidence.[7]  Nathan Felton of BLM testified that, the United

---

[6]Doc. 40.

[7]Def. Exs. 1, 2, and 10; Pl. Ex. 6.

States surveyed only a fraction of the area in 1845, where the disputed land lies.[8]  According to Mr. Felton, only thirteen acres of Section 23 were surveyed.[9]  The rest of Section 23, including the subject property, was not surveyed until 1915.[10]

In 1856, the United States issued a patent conveying "the whole of fractional Section Twenty Three" to the State of Arkansas.[11]  Plaintiffs argue that this patent not only conveyed the thirteen-acre portion of Section 23 surveyed in 1845, but also conveyed the portion surveyed in 1915, which included the subject land.[12]  Plaintiffs bolster their argument by pointing out that, after 1915, the United States didn't tell the State of Arkansas that the only land included in the Swamp Act conveyance was only thirteen acres surveyed in 1845.[13]  Plaintiffs' arguments fail.

The greater weight of the evidence shows that the 1856 patent conveyed the thirteen acres surveyed in 1845 -- nothing more.  As Mr. Felton testified, the federal government considered the land nonexistent until it was surveyed.[14]  Because the land did not legally "exist" until 1915, the 1856 patent could not convey the land to the State.[15]

---

[8]Tr. 19, 60.  The survey was conducted in 1845 and approved by the Surveyor General's office in 1846.  Tr. 60.  The United States acquired the land in the Louisiana Purchase.

[9]Tr. 60, 62.

[10]Tr. 20-21.  The original survey designated these portions as part of the "Waters of the St. Francis River."  U.S. Ex. 1.

[11]Pl. Ex. 6.

[12]Doc .No.  71, 4-5.

[13]Doc. No.  71, 4.

[14]Tr. 21-22.

[15]Tr. 22.

4

"Unsurveyed lands are not 'public lands,' within the meaning of the law, so as to be subject to sale, entry, or disposal under the laws of the United States."[16] Official and recognized boundaries of public lands are only established by a government survey.[17] A sale of public lands before it is surveyed is void.[18] However, "[i]f the public survey is regularly made, returned, and approved, a sale will be valid, although the survey is defective, if the error does not render the identity, locality, and quantity of the tract uncertain."[19]

In view of clear precedent, the 1856 patent did not convey unsurveyed portions of Section 23. The 1856 patent language cited by Plaintiffs -- "the whole of fractional Section Twenty Three"-- supports the United States' argument when read in conjunction with other land descriptions.[20] For example, the 1856 patent conveys "the *whole* of Section Seventeen."[21] Under the original plat, *all* of Section 17, and only a portion of Section 23 was surveyed.[22] The inclusion of the word "fractional" to describe Section 23 indicates that the conveyance included only thirteen surveyed acres.

A comparison between references to Section 17 and Section 23 in the 1856 patent demonstrate that there was no intention to convey all land in Section 23. There is no document setting out the locality and quantity of the disputed land before the 1915 survey was preformed.

---

[16] *Douglass v. Rhodes*, 280 F. 230, 231 (E.D. Ark. 1922).

[17] *Smith v. Whitney,* 74 P.2d 450 ( Mont.1937).

[18] *Rector v. Gaines*, 19 Ark. 70 (1857).

[19] *Id.*

[20] Doc. 71, 4-5; Pl. Ex. 6.

[21] Pl. Ex. 6(emphasis added).

[22] Def. Ex. 1.

Finally, the Swamp Act conveyance entry describes the property as "all of [Section] 23, . . . 13-39/00 acres."[23] The evidence shows that the Swamp Act conveyance did not divest the United States of title to portions of unsurveyed land within Section 23.

### B.  Equitable Estoppel

Plaintiffs argue that equitable estoppel prevents the United States from claiming title to the land in question at the time it issued the 1965 patent to Arkansas Game and Fish.  This argument is without merit.  Equitable principles of estoppel, laches or adverse possession are not applied to the Federal Government.  Unlike private parties, the Government will not be penalized for simple neglect:

> The Government, which holds its interests here as elsewhere in trust for all the people, is not to be deprived of those interests by the ordinary court rules designed particularly for private disputes over individually owned pieces of property; and officers who have no authority at all to dispose of Government property cannot by their conduct cause the Government to lose its valuable rights by their acquiescence.[24]

"The Government may *not* be estopped on the same terms as any other litigant."[25] A party seeking to estop the government must first establish that it engaged in *affirmative* misconduct.[26] This is a heavy burden.[27] Affirmative misconduct is more than mere negligence --

---

[23]Def. Ex. 3,(General Land Office Tract Book).

[24]*United States v. State of California*, 332 U.S. 19 (1947).

[25]*Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60, (1984) (emphasis added).

[26]*INS v. Miranda*, 459 U.S. 14, 19 (1982) (*per curiam*); *see also Rutten v. United States*, 299 F.3d 993, 995-96 (8th Cir. 2002); *Morgan v. C.I.R.*, 345 F.3d 563 (8th Cir. 2003)(emphasis added).

[27]*Office of Personnel Management v. Richmond*, 496 U.S. 414, 422 (1990) (noting that "we have reversed every finding of estoppel [against the government] that we have reviewed").

6

it is an act that either intentionally or recklessly misleads the plaintiff.[28]  For example, affirmative misconduct is lying rather than misleading -- it is a deliberate pattern of false promises.[29]

Plaintiffs presented no evidence that the United States or BLM engaged in deliberate lies designed to mislead Plaintiffs or their predecessors.  In fine, the United States was the rightful owner of the land in 1965 when it issued the patent to Arkansas.  The patent was valid and its terms, and the law under which it was issued, control.

**C. Reversion**

Under the language of the 1965 patent and according to 43 U.S.C. § 869-2, public lands conveyed to governmental bodies for public use cannot end up in private hands, but must revert to the United States.

The specific terms of the patent state: "lands [that] are devoted to a use other than that for which the lands were conveyed, without the consent of the Secretary of the Interior or his delegate . . . shall revert to the United States."[30]  The relevant statutory language is as follows:

> If at any time after the lands are conveyed by the Government, the grantee or its successor attempts to transfer title to or control over these lands to another *or the lands are devoted to a use other than that for which the lands were conveyed, without the consent of the Secretary, title to the lands shall revert to the United States.*[31]

---

[28]*Michigan Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2005); *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001); *LaBonte v. U.S.*, 233 F.3d 1049 (7th Cir. 2000); *United States v. Marine Shale Processors*, 81 F.3d 1329, 1350 (5th Cir. 1996); *Keener v. E. Associated Coal Corp.,* 954 F.2d 209, 214 (4th Cir. 1992).

[29]*Keener,* 954 F2d 214; *Socop-Gonzalez*, 272 F.3d 1184.

[30]Def. Ex. 4.

[31]43 U.S.C § 869-2 (emphasis added).

7

According to the patent, the land was transferred for "fish and wildlife management purposes *only*."[32]  Plaintiffs' contention that there is no proof they would use the land for other purposes is unconvincing.  Reading the terms of the 1965 patent and the requisite "management plan"[33] submitted by the AGFC at the time of the conveyance, makes it clear that when the government says "fish and wildlife management," it means something more substantial than private hunting and fishing excursions.[34]

## III.  Conclusion

The weight of the evidence shows that the United States owned the disputed property -- Lots 1 and 4 of Section 23, Township 25 North, Range 6 East in Craighead County, Arkansas -- from the time of the Louisiana Purchase until 1965. There was no conveyance of the land in 1856, because it was unsurveyed and legally nonexistent.  It was surveyed in 1915 and given to Arkansas in 1965 for fish and wildlife management.  After Arkansas and AGFC lost its claim, the property reverted to the United States.

Valid title to the land described above belongs to the United States Department of Interior and the Bureau of Land Management.  Plaintiffs' Petition to Quiet Title in them is DENIED.  The United States as Counter Claimant, has good and clear title to the property interests retained in the Patent of 1965.

IT IS SO ORDERED this 24th day of March, 2006.

/s/ Wm. R.Wilson,Jr.
UNITED STATES DISTRICT JUDGE

---

[32] Def. Ex. 10 (emphasis added).

[33] Def. Ex. 8.

8